BOGERT *against* CAUMAN.

All previous parol agreements are merged in a written contract.
Where the wages of a seaman appear by shipping articles, evidence of a
further compensation, by way of customary privilege, cannot be received.

ACTION on the case for a breach of contract.

Plea, general issue.

The plaintiff was mate of the ship Magdalen, commanded by the defendant, on a voyage from New York to Canton and back to New York. On the outward voyage, he was degraded by the captain, and compelled to leave the ship. To prove the damages sustained, the plaintiff's counsel demanded the shipping articles, which were produced, and were in the common form, and signed by the defendant. By these articles, it appeared that the plaintiff was to receive, on the voyage, 40 dollars per month, as first mate. The plaintiff's counsel then attempted to prove, that he was also to have had three tons privilege.

THOMPSON, J. The testimony is inadmissible. You have produced a written contract, and all previous parol agreements are merged in it.

They then offered to prove, that it was the established usage of the city, to allow this privilege, and that it was never expressed in the articles.

THOMPSON, J. This testimony would have been correct if no written contract had been produced. But I cannot

allow evidence of a custom, to control the law applicable to the construction of such contracts.(1)

*Baldwin* and *Wells*, for the plaintiff.

*Emmet* and *Colden*, for the defendant.

(1) The counsel, in this case, seems to have been impressed with the idea, that the shipping articles being a mercantile contract, would be controlled by the general usage of the particular trade in which the parties were to be engaged. That this holds as a sound rule, in various cases, where the usage is of such a nature as to authorize the inference, that the contract was made with reference to it, cannot be disputed. Vide *ante*, note, p. 79. But, in this particular case, the contract grows out of a statute which cannot be affected by usage. This same question has been decided in the same way, in the high court of admiralty in England, and also in the court of common pleas there, and the proof of usage rejected on the very ground of its being a contract under the statute.

In the case of the Isabella, (2 Robinson, 199,) the representative of the chief mate, (he having died on the voyage,) demanded wages under the shipping articles, on a voyage from London to the coast of Africa, and from thence to the West Indies, and also an additional sum, as the value of a privilege of one slave, said to be part of the agreement, and a privilege due under the ordinary practice of that trade; but the court rejected that part of the petition claiming the privilege, observing, that if any such understanding existed between the parties, care ought to be taken to insert it in the articles. That the articles being required by statute, it was impossible to set up a demand of this collateral nature, and to support it on the plea of a customary right. So, in the case of *White* v. *Wilson*, (2 Bos. & Pull. 116,) the chief mate claimed, on a similar voyage, the value of a similar privilege, which was rejected. Lord Eldon, observing: "If the legislature have decided that all agreements for wages shall be in writing, and the practice be not to put in writing contracts for the price of one, two, or more slaves, that practice, if allowed to prevail, may be made the means of evading the provisions of the act."

There are two particular statutes in England relative to seamen's contracts for wages. One, the general act for the regulation and government of seamen in the merchant's service; (2 Geo. 2, c. 36; made perpetual by 2 Geo. 3, c. 31;) the other, (39 Geo. 3, c. 80, sec. 27,) for the regulation of the trade

to Africa. Both of which statutes declare, that articles shall be signed by the crew, and, when signed, shall be conclusive and binding on all parties, any usage or custom to the contrary, notwithstanding. Our statute compels the master, under a penalty, to make an agreement in writing, or in print, with every seaman on board his vessel, declaring the voyage and term of time, for which the seaman is shipped. 1 Laws U. S. 134.

The decisions, above referred to, were made with reference to the act of parliament, regulating the African trade. The act of congress, however, is as strong in its injunctions, as the English act, and those decisions, therefore, are, in principle, fairly applicable to it.